**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

JOSE MARLON GARCIA MENJIVAR, )
*et al.*, )
                           )
       Plaintiffs, )
                            )
         v.                )      Case No.: 1:24-cv-107 (RDA/LRV)
                            )
NOVA SHORTCRETE AND )
CONCRETE, INC., *et al.*, )
                            )
       Defendants. )
                            )

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiffs Jose Marlon Garcia Menjivar, Neptali Lopez Soriano, Juan Hernandez, Eduardo Garcilazo Barerra, and Juvencio Garcilazo Barerra's[1] (collectively, "Plaintiffs") Motion for Default Judgment. (Dkt. No. 12.) Plaintiffs seek to recover earned and unpaid wages and liquidated damages against Defendants Nova Shotcrete and Concrete, Inc. ("NSC") and Crystal Blue Aquatics, LLC ("CBA"), jointly and severally, under the Fair Labor Standards Act ("FLSA"), the Virginia Overtime Law ("VOL"), and the Virginia Wage Payment Act ("VWPA").[2] For the reasons explained below, the undersigned recommends that Plaintiffs' motion be granted.

---

[1] The undersigned adopts the spelling of Plaintiffs Eduardo Garcilazo Barerra and Juvencio Garcilazo Barerra's last names used in their sworn declarations (i.e., "Barerra"). (*See* Dkt. Nos. 12-2, 12-3.) In the Complaint and Motion for Default Judgment, Plaintiffs' last names are, at times, spelled as "Barrera."

[2] The Complaint also alleges claims under the Maryland Wage Hour Law ("MWHL") in Count III and the Maryland Wage Payment Collection Law ("MWPCL") in Count V. In the Motion for Default Judgment, Plaintiffs state that they "disregard relief sought in the Complaint under Maryland law and seek recovery exclusively under the FLSA and Virginia law" because Plaintiffs "each worked at least fifty percent of his [sic] compensable work hours within Virginia." (Dkt.

## I.    Factual and Procedural Background

On January 22, 2024, Plaintiffs filed a Complaint against Defendants.  (Dkt. No. 1.) Plaintiffs allege violations of the FLSA (Count I, ¶¶ 84–88), VOL (Count II, ¶¶ 89–93), MWHL (Count III, ¶¶ 94–98), VWPA (Count IV, ¶¶ 99–102), and MWPCL (Count V, ¶¶ 103–06).  On February 5, 2024, Plaintiffs served the Complaint and Summonses on Tyler Heidt, an authorized representative of Alex Heidt, Defendants' registered agent. (Dkt. Nos. 5, 6.)  Under Federal Rule of Civil Procedure 12, Defendants' responsive pleadings were due no later than February 26, 2024. *See* Fed. R. Civ. P. 12(a)(1).  To date, Defendants have failed to plead or otherwise defend the allegations set forth in the Complaint.  Accordingly, on February 29, 2024, Plaintiffs filed a Motion for an Entry of an Order of Default.  (Dkt. No. 7.)  The Clerk of Court entered a default as to Defendants on March 7, 2024. (Dkt. No. 10.)  On November 7, 2024, Plaintiffs filed a Motion for Default Judgment. (Dkt. No. 12.)  Plaintiffs waived a hearing on the default motion. (Dkt. No. 13.)  To date, no Defendant has appeared or otherwise participated in this action.

The following facts are established in the Complaint.[3]  Plaintiffs are adult residents of Virginia and Maryland. (Dkt. No. 1 ¶ 1.)  Defendant NSC is a corporation formed under the laws of the Commonwealth of Virginia. (*Id.* ¶ 2.)  Defendant CBA is a limited liability company formed under the laws of the Commonwealth of Virginia.  (*Id.* ¶ 3.)  Defendants design, construct, and renovate custom swimming pools for clients in Virginia and Maryland. (*Id.* ¶ 4.)  At all times relevant to this action, Defendants operated from the same principal office located at 64 Sycolin

---

No. 12 at 14.)  Accordingly, the undersigned does not analyze Plaintiffs' MWHL or MWPCL claims and recommends that Counts III and V be dismissed.

[3] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

Road, Suite A, Leesburg, Virginia 20175. (*Id.* ¶¶ 2–3.) In 2022 and 2023, Defendants realized annual sales or revenue exceeding $500,000.00. (*Id.* ¶ 19.)

Plaintiff Eduardo Garcilazo Barerra was employed by Defendants for approximately 79 weeks, from around February 2022 until August 9, 2023, with the exception of personal leave periods: (i) from January 22, 2023, through February 8, 2023; (ii) from March 12, 2023, through March 21, 2023; and (iii) from July 4, 2023, through July 17, 2023. (Dkt. No. 1 ¶ 24.) Plaintiff Eduardo Barerra performed manual labor and supplemental foreman duties for Defendants, including communicating with Defendants' clients, driving Defendants' company truck to and from Defendants' yard and job locations, and managing and directing duties of Defendants' employees. (*Id.* ¶¶ 25–26.) Plaintiff Eduardo Barerra performed approximately 90% of his work duties on jobs in Virginia, and about 10% of his work duties on jobs in Maryland. (*Id.* ¶ 27.) Plaintiff Eduardo Barerra typically worked five days per week, for an average of 65 compensable work hours per week. (*Id.* ¶ 28.) Defendants paid Plaintiff Eduardo Barerra a set salary of $2,500.00 per week. (*Id.* ¶ 30.) Defendants did not pay Plaintiff Eduardo Barerra at the one-and-one-half times premium rate for hours he worked above 40 hours per week. (*Id.* ¶ 31.) Defendants also did not pay Plaintiff Eduardo Barerra for his last two weeks of employment or reimburse him for personal monies used to pay for Defendants' business expenses in the amount of about $450.00. (*Id.* ¶ 34.)

Plaintiff Juvencio Garcilazo Barerra was employed by Defendants for approximately 79 weeks, from around February 2022 until August 9, 2023. (*Id.* ¶ 36.) Plaintiff Juvencio Barerra performed manual labor and supplemental foreman duties for Defendants, including communicating with Defendants' clients, driving Defendants' company truck to and from Defendants' yard and job locations, and managing and directing duties of Defendants' employees.

(*Id.* ¶¶ 37–38.)  Plaintiff Juvencio Barerra performed approximately 80% of his work duties on jobs in Virginia, and about 20% of his work duties on jobs in Maryland.  (*Id.* ¶ 39.)  Plaintiff Juvencio Barerra typically worked five days a week, for an average of 60 compensable hours per week.  (*Id.* ¶ 40.)  Defendants paid Plaintiff Juvencio Barerra a salary of $1,800.00 per week in 2022 and $2,500 per week in 2023.  (*Id.* ¶ 42.)  Defendants did not pay Plaintiff Juvencio Barerra at the one-and-one-half times premium rate for hours he worked above 40 hours per week.  (*Id.* ¶ 45.)  Defendants also did not pay Plaintiff Juvencio Barerra for his last two weeks of employment.  (*Id.* ¶ 46.)

Plaintiff Jose Marlon Garcia Menjivar was employed by Defendants for approximately 48 weeks, from around September 2022 until August 9, 2023.  (*Id.* ¶ 48.)  Plaintiff Menjivar performed manual labor for Defendants, including pouring concrete for pools and patios and driving Defendants' company truck to and from jobsites.  (*Id.* ¶ 49.)  Plaintiff Menjivar performed approximately 50% of his work duties on jobs in Virginia and the other 50% of his work duties on jobs in Maryland.  (*Id.* ¶ 51.)  From September 2022 through October 2022, Plaintiff Menjivar typically worked five days a week, for an average of 45 compensable hours per week.  (*Id.* ¶ 53.)  From November 2022, through August 9, 2023, Plaintiff Menjivar typically worked five days a week, for an average of 60 compensable hours per week.  (*Id.* ¶ 55.)  While employed, Defendants paid Plaintiff Menjivar a set salary of $1,500.00 per week.  (*Id.* ¶ 52.)  Defendants did not pay Plaintiff Menjivar at the one-and-one-half times premium rate for hours he worked above 40 hours per week.  (*Id.* ¶ 58.)  Defendants also did not pay Plaintiff Menjivar for his last two weeks of employment.  (*Id.* ¶ 59.)

Plaintiff Juan Hernandez was employed by Defendants from about November 8, 2022, until about August 9, 2023, about 39 weeks.  (*Id.* ¶ 61.)  Plaintiff Hernandez performed manual labor

for Defendants, including pouring concrete for pools and patios. (*Id.* ¶ 62.) Plaintiff Hernandez performed approximately 70% of his work duties on jobs in Virginia, and about 30% of his work duties on jobs in Maryland. (*Id.* ¶ 65.) Plaintiff Hernandez typically worked 5 days per week, for an average of about 50 compensable work hours per week. (*Id.* ¶ 64.) While employed, Defendants paid Plaintiff Hernandez as an hourly employee at the rate of $28.00 per hour. (*Id.* ¶ 66.) Defendants did not pay Plaintiff Hernandez at the one-and-one-half times premium rate for hours he worked above 40 hours per week. (*Id.* ¶ 68.) Defendants also did not pay Plaintiff Hernandez for his last two weeks of employment. (*Id.* ¶ 69.)

Plaintiff Neptali Lopez Soriano was employed by Defendants for approximately 52 weeks, from August 2022 until August 9, 2023. (*Id.* ¶ 71.) Plaintiff Soriano performed manual labor for Defendants, including pouring concrete for pools and patios. (*Id.* ¶ 72.) Plaintiff Soriano performed approximately 80% of his work duties on jobs in Virginia, and about 20% of his work duties on jobs in Maryland. (*Id.* ¶ 75.) Plaintiff Soriano typically worked 5 days per week, for an average of about 55 compensable work hours per week. (*Id.* ¶ 74.) While employed, Defendants paid Plaintiff Soriano at the rate of $300.00 per day. (*Id.* ¶ 76.) Defendants did not pay Plaintiff Soriano at the one-and-one-half times premium rate for hours he worked above 40 hours per week. (*Id.* ¶ 78.) Defendants also did not pay Plaintiff Soriano for his last two weeks of employment. (*Id.* ¶ 79.)

## II.  <u>Legal Standard</u>

A default may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Although a defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), conclusions of law or "allegations regarding liability that

are not 'well-pleaded'" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014). Before entering default judgment, therefore, the Court must determine whether the facts, as alleged in the Complaint, state a claim for relief. *JTH Tax, Inc.*, 8 F. Supp. at 736 (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)). Additionally, damages alleged in the Complaint are not deemed admitted by a defaulting defendant. Rather, the Court "must make an independent determination regarding damages," including by reliance on affidavits or documentary evidence in the record. *See Wilcox v. Transmodal Solutions*, LLC, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020); Fed. R. Civ. P. 8(b)(6).

The Court must also find that there is subject matter jurisdiction, personal jurisdiction over the defaulting defendants, and that venue and service of process are proper. *See Am. Auto. Assoc. v. AAA Auto Glass, LLC*, No. 1:14CV1072, 2015 WL 3545927, at *1–2 (E.D. Va. June 3, 2015).

## III.    Proposed Findings

### A.    Jurisdiction and Venue

The undersigned finds that the Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the instant action alleges violations of the FLSA, a federal statute. Moreover, the FLSA specifically vests district courts with jurisdiction over any action to recover unpaid overtime wages. *See* 29 U.S.C. § 216(b). Because the Virginia law claims arise from the same facts and are based on the same case or controversy as the FLSA claim, the undersigned further finds that the Court may exercise supplemental jurisdiction over the Virginia law claims. 28 U.S.C. § 1367(a). The undersigned also finds that the Court has personal jurisdiction over Defendants. Defendant NSC is a Virginia corporation formed under the laws of the Commonwealth of Virginia,

and its principal place of business is located in Leesburg, Virginia. (Dkt. No. 1 ¶ 2.) Defendant CBA is a Virginia limited liability company with a principal place of business in Leesburg, Virginia. (*Id.* ¶ 3.) Accordingly, the Court has general personal jurisdiction over both Defendants because they are "at home" in the Eastern District of Virginia. *Aukhert v. Pritt Inv. Partners, LLC,* No. 1:22-CV-00655 (MSN/WBP), 2024 WL 5410979, at *3 (E.D. Va. Dec. 16, 2024), *report and recommendation adopted,* No. 1:22-CV-00655 (MSN/WBP), 2025 WL 817600 (E.D. Va. Mar. 14, 2025) (citing *Symbology Innovations, LLC v. Lego Sys., Inc.,* 282 F. Supp. 3d 916, 936 (E.D. Va. 2017). Finally, the undersigned finds that venue is proper in this district because Defendants are residents of Virginia and because a substantial part of the events or omissions giving rise to Plaintiffs' claims against Defendants occurred in this district. 28 U.S.C. §§ 1391(b)(1)–(2).

### B.   Service of Process

Under Federal Rule of Civil Procedure 4(h), service of process may be effected on a domestic corporation or other unincorporated association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). On February 5, 2024, a private process server served Tyler Heidt with a copy of the Summons and Complaint at 11230 Waples Mill Road, Suite 105, Fairfax, Virginia 22030-6002. (*See* Dkt. Nos. 5, 6.) Per their respective business registrations with the Virginia State Corporation Commission, the registered agent for both Defendants is:

> Alex Heidt
> 11230 Waples Mill Road
> Suite 105
> Fairfax, VA 22030-6002

The process server confirmed that Tyler Heidt was authorized to accept service on behalf of Alex Heidt, Defendants' registered agent. (*See id.*) Moreover, on May 2, 2024, Alex Heidt informed

Plaintiffs' counsel via email that Tyler Heidt was authorized to accept service of process on his behalf, and that copies of the Summons and Complaint were forwarded to both Defendants.[4] (*See* Dkt. No. 12-1.)  The undersigned thus finds that Defendants were properly served with the Summons and Complaint.

### C.   Grounds for Entry of Default

Federal Rule of Civil Procedure 55 requires entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Under Federal Rule of Civil Procedure 12(a), Defendants' responsive pleadings were due on February 26, 2024.  To date, Defendants have not appeared, answered, or otherwise filed any responsive pleadings in this case.  Plaintiffs requested an entry of default on February 28, 2024, and on March 7, 2024, the clerk's office entered a default as to Defendants.  (Dkt. Nos. 7, 10.)  The undersigned finds that the clerk's office properly entered default as to both Defendants.

### D.   Liability

#### 1.   FLSA and VOL Claims

In Counts I and II of the Complaint, Plaintiffs seek relief for unpaid overtime wages under the FLSA and the "Virginia Overtime Law," respectively.  (Dkt. No. 1 ¶¶ 84–93.)  Presumably, the "Virginia Overtime Law" referenced in the Complaint is the Virginia Overtime Wage Act ("VOWA"), Va. Code § 40.1-29.2.  The analysis for claims under the VOWA mirrors the analysis for overtime pay claims under the FLSA.  *See* Va. Code § 40.1-29.2 ("Any employer that violates the overtime pay requirements of the federal Fair Labor Standards Act ... shall be liable to the employee for the applicable remedies ... under the federal Fair Labor Standards Act in an action

---

[4] Copies of Plaintiffs' Motion for Default Judgment were mailed to Defendants at their principal office address, 64 Sycolin Road, Suite A, Leesburg, Virginia 20175. (*See* Dkt. No. 12 at 19.)

brought pursuant to the process in subsection J of § 40.1-29."). Accordingly, the undersigned addresses the federal and state law claims for overtime pay together as FLSA claims. *See Hudson v. Dunn*, No. 1:23-CV-781 (RDA/WBP), 2024 WL 2870845, at *5 (E.D. Va. Mar. 15, 2024), *report and recommendation adopted*, No. 1:23-CV-781 (RDA/WBP), 2024 WL 2866342 (E.D. Va. June 5, 2024).

To establish a violation of the FLSA and the VOWA for nonpayment of overtime hours, a plaintiff must show that (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; (3) the plaintiff worked over 40 hours per work week; (4) the plaintiff was not compensated at a rate of 1.5 times his or her regular rate for each hour worked more than 40 hours for each work week; and (5) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position. *See* 29 U.S.C. § 207. Under the FLSA's overtime wage provision, a plaintiff is required to plead "(1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate him for it." *Rodriguez v. F&B Solutions LLC*, 20 F. Supp. 3d 545, 547 (E.D. Va. 2014).

Plaintiffs have sufficiently alleged these elements in the Complaint. First, Plaintiffs were employed by Defendants. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employ" is defined to include "to suffer or permit to work." *Id.* § 203(g). Here, Defendants "held full authority to hire, fire, discipline, and/or alter Plaintiffs' conditions of employment." (Dkt. No. 1 ¶ 9.) Defendants also directed Plaintiffs "to perform compensable duties," (*id.* ¶¶ 17, 25, 37, 51, 63, 73), and set Plaintiffs' salaries and hourly and daily rates of pay (*id.* ¶¶ 30, 42, 52, 66, 76). Plaintiffs have alleged facts sufficient to satisfy the first element of an overtime violation

9

claim under the FLSA.  *See Villatoro v. Crespo's Gen. Contracting, LLC*, No. 1:15CV606, 2016 WL 2601835, at *4 (E.D. Va. Mar. 28, 2016), *report and recommendation adopted*, No. 1:15CV606 (JCC/TCB), 2016 WL 2344226 (E.D. Va. May 3, 2016).

Second, Plaintiffs were engaged in interstate commerce or in the production of goods for interstate commerce.  An employee who works for an enterprise engaged in commerce or the production of goods for commerce is an employee covered by the FLSA, regardless of his actual work duties.  *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 524 (D. Md. 2006) (citing 29 U.S.C. § 203(s)(1)(A)).  An "enterprise engaged in commerce or in the production of goods for commerce" is defined as one that:

> (i) [H]as employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. § 203(s)(1)(A).  Here, Defendants employed Plaintiffs "to perform custom swimming pool design, construction, and renovations for joint and/or common clients in Virginia and Maryland." (Dkt. No. 1 ¶ 4.)  And, at all times relevant to this action, Defendants "individually and commonly realized annual sales or revenue exceeding $500,000.00." (*Id.* ¶ 19.)  Plaintiffs were thus engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).  *See Villatoro*, 2016 WL 2601835, at *4.

Third, Plaintiffs worked over 40 hours per week during the time period for which they were employed by Defendants.[5]  Plaintiff Eduardo Barerra worked an average of 65 work hours per

---

[5] The FLSA requires the employer to keep certain records of hours worked and wages paid.  29 U.S.C. § 211(c).  Where the employer fails to keep adequate records, the employee enjoys a lenient burden of proof.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by*

week. (Dkt. No. 1 ¶ 29; *see also* Dkt. No. 12-2.) Plaintiff Juvencio Barerra worked an average of 60 hours per week. (Dkt. No. 1 ¶ 40; *see also* Dkt. No. 12-3.) Plaintiff Menjivar worked an average of 45 hours per week during the period of September 2022 through October 2022 and 60 hours per week during the period of November 2022 through August 9, 2024. (Dkt. No. 1 ¶¶ 53–56; *see also* Dkt. No. 12-4.) Plaintiff Hernandez worked an average of 50 hours per week. (Dkt. No. 1 ¶ 63; *see also* Dkt. No. 12-5.) Plaintiff Soriano worked an average of 55 hours per week. (Dkt. No. 1 ¶ 73; *see also* Dkt. No. 12-6.) Plaintiffs have adequately demonstrated facts to support this element of their claims. *See Villatoro*, 2016 WL 2601835, at *4.

Fourth, Plaintiffs were not compensated at a rate of one-and-one-half times their regular rates or otherwise paid overtime wages for each hour worked in excess of 40 hours per week. (*See* Dkt. No. 1 ¶¶ 31, 43, 58, 68, 78; Dkt. Nos. 12-2 through 12-6.) Accordingly, this element is satisfied. *See Villatoro*, 2016 WL 2601835, at *5.

---

*statute on other grounds as recognized in IBP, Inc. v. Alvarez*, 546 U.S. 21, 25–28 (2005). As the Supreme Court held in *Anderson*:

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer.... If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.... It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

328 U.S. at 687–88. Furthermore, an employee's affidavit about his recollection of the hours he worked and the pay he received, if deemed credible by the Court, may be a basis for the Court to award damages. *See, e.g., Wirtz v. Durham Sandwich Co.*, 367 F.2d 810, 812 (4th Cir. 1966); *Lopez v. Lawns 'R' Us*, Civ. No. DKC 07–2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008) ("An employee's testimony as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed.").

Fifth, no evidence has been produced to show that any of the exemptions listed in 29 U.S.C. § 213 apply to Plaintiffs.[6]  Consequently, Plaintiffs appear to be covered employees entitled to payment of overtime wages.  *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exemption.").  The undersigned thus finds that Plaintiffs have stated claims under the FLSA and the VOWA.

> 2.   VWPA Claim

In Count IV of the Complaint, Plaintiffs seek relief for unpaid wages, inclusive of overtime, under the VWPA, Va. Code. § 40.1-29.  (Dkt. No. 1 ¶¶ 99–102; *see also* Dkt. No. 12 at 14.)  In relevant part, the VWPA requires Virginia employers to pay salaried employees at least once per month and hourly employees at least every two weeks or bi-monthly and upon termination of employment, pay an employee "all wages or salaries due him for work performed thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." Va. Code. § 40.1-29(A). An employee may file a private civil action for violation of the VWPA "if an employer fails to pay wages to [him] in accordance with [the VWPA] … and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in [Va. Code § 40.1-29(G)], and reasonable attorney fees and costs." *Id.* § 40.1-29(J). "If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall

---

[6] Despite the FLSA requiring overtime pay in terms of hourly rate, salaried employees are not automatically exempt—employees are due overtime compensation whether they work on an hourly or a salary basis. *Rodriguez v. Cap. Com. Sols., LLC*, 353 F. Supp. 3d 452, 454 (E.D. Va. 2017); *Berrios v. Green Wireless, LLC*, No. GJH-14-3655, 2018 WL 1229728, at *3 (D. Md. Mar. 8, 2018) (citing *Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688, 692 n.4 (4th Cir. 2009)).

award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." *Id.* The VWPA provides that a person acts "knowingly" if they "with respect to information, (i) [have] actual knowledge of the information, (ii) act[] in deliberate ignorance of the truth or falsity of the information, or (iii) act[] in reckless disregard of the truth or falsity of the information," but there is no need to prove specific intent to defraud. *Id.* § 40.1-29(K).

The facts in the Complaint and in Plaintiffs' declarations are sufficient to state a claim for relief under the VWPA. First, during Plaintiffs' periods of employment with Defendants, Defendants were employers within the meaning of the VWPA. An "employer" under the VWPA "means an individual, partnership, association, corporation … doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Va. Code § 40.1-2. Defendants were therefore Plaintiffs' employers because they hired Plaintiffs to perform work in exchange for their agreed upon wages. (*See* Dkt. No. 1 ¶¶ 9, 17, 25, 37, 51, 63, 73.)

Second, the record establishes that Defendants withheld wages due and owing to Plaintiffs.[7] Under the VWPA, employers may not "withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without written and signed authorization of the employee." Va. Code § 40.1-29(C). Here, Plaintiffs allege that Defendants failed to pay Plaintiffs "earned wages for [their] last 2 weeks of employment," in addition to overtime wages, as stated above. (Dkt. No. 1 ¶¶ 34, 46, 59, 69, 79; *see also* Dkt. Nos.

---

[7] The VWPA does not define "salary" or "wages." But numerous state and federal courts have applied the broad definition of "wages" as "compensation given to a hired person for his or her services." *Campbell v. Groundworks Operations, LLC*, 82 Va. App. 580, 590–91 (2024), *appeal granted* (May 6, 2025) (collecting cases).

12-2 through 12-6.) Nothing in the record suggests that Defendants withheld Plaintiffs' wages due to taxes, in accordance with the law, or with Plaintiffs' signed authorization. The undersigned thus finds that Defendants violated the VWPA. *See Hudson v. Dunn*, No. 1:23-CV-781 (RDA/WBP), 2024 WL 2870845, at *6 (E.D. Va. Mar. 15, 2024), *report and recommendation adopted*, No. 1:23-CV-781 (RDA/WBP), 2024 WL 2866342 (E.D. Va. June 5, 2024) (finding allegations that the plaintiffs "[had] not been paid wages or overtime between March and April 2023," "were not given paystubs," and "were not paid with the regularity" stated a claim under the VWPA).

        3.   <u>Joint and Several Liability</u>

Plaintiffs allege that Defendants "commonly or jointly employed Plaintiffs to perform compensable employment duties for Defendants' common primary benefit," and "[a]t all times relevant to this action, … qualified as Plaintiffs' … joint employer" as defined under the FLSA, VOWA, and VWPA. (Dkt. No. 1 ¶¶ 17, 21 (internal quotation marks omitted)); *see also Senteno v. Jung*, 2024 WL 717067, at *4 (E.D. Va. Jan. 26, 2024) (applying "joint employer" theory to the FLSA and VWPA). The Fourth Circuit has identified six factors to aid courts in considering whether a joint employment relationship exists between one or more employers:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

> (3) The degree of permanency and duration of the relationship between the putative joint employers;

> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

14

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 141–42 (4th Cir. 2017).

Here, the undersigned finds that Defendants are joint employers. As alleged in the Complaint, Defendants operated from the same principal office located at 64 Sycolin Road, Suite A, Leesburg, Virginia 20175. (Dkt. No. 1 ¶¶ 2–3.) Moreover, the same individuals held substantial financial interests in the operations of both Defendants; served as corporate officers and members of both Defendants; served as managers and supervisors of both Defendants; and were physically present at common job locations. (*Id.* ¶¶ 5–13.) Additionally, the same individuals "held full authority to create, implement, and enforce rules, policies, regulations, and best practices" at Plaintiffs' job locations; "substantially participated in decisions on behalf of [Defendants] to fail or refuse to pay Plaintiffs [sic] wages"; and "held full authority to hire, fire, discipline, and/or alter Plaintiffs' conditions of employment." (*Id.* ¶¶ 9, 13–14.) These facts are sufficient to support a finding that Defendants jointly exercised direction, control and supervision over Plaintiffs, jointly determined the power to hire or fire Plaintiffs, shared management personnel, and jointly controlled the premises where Plaintiffs performed work. For these reasons, the undersigned is satisfied that Defendants "share[d] or codetermine[d] the essential terms and conditions of [Plaintiffs'] employment," *Salinas*, 848 F.3d at 142, such that Defendants should be treated as Plaintiffs' joint employers. Accordingly, the undersigned finds that Defendants are jointly and severally liable for violations of the FLSA, VOWA, and VWPA. *See Prasch v. Bottoms Up*

15

*Gentlemen's Club, LLC*, No. 23-CV-00634-LKG, 2024 WL 2977885, at *8 (D. Md. June 13, 2024).

### E.   Requested Relief

As relief, Plaintiffs request "earned and unpaid overtime wages ..., plus statutory liquidated damages ..., plus interest, and the payment of Plaintiffs' attorney's fees and costs" for the FLSA and VOWA claims. (Dkt. No. 1 at 16, 17.)  Plaintiffs further request "earned and unpaid wages ..., plus statutory liquidated damages, plus interest, and the payment of Plaintiffs' attorney's fees and costs" for the VWPA claim.  (*Id.* at 19.)  The undersigned addresses each request in turn.

### 1.   Damages Under the FLSA, VOWA, and VWPA

Under the FLSA and the VOWA,[8] employers must pay employees an overtime premium of one and one-half of their "regular rate" for each hour over 40 hours worked per week.  *See* 29 U.S.C. § 207(a)(1); Va. Code § 40.1-29.2; *see also Hudson v. Dunn*, No. 1:23-CV-781 (RDA/WBP), 2024 WL 2870845, at *7 (E.D. Va. Mar. 15, 2024), *report and recommendation adopted*, No. 1:23-CV-781 (RDA/WBP), 2024 WL 2866342 (E.D. Va. June 5, 2024).  For hourly employees like Plaintiff Hernandez, who alleges that he was paid at the rate of $28.00 per hour, "the hourly rate is the 'regular rate.'" 29 C.F.R. § 778.110.  For employees like Plaintiff Soriano, who alleges that he was paid at the rate of $300.00 per day, the "regular rate is determined by totaling all the sums received at such day rates ... in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112.  For salaried employees like Plaintiffs Eduardo Barerra, Juvencio Barerra, and Menjivar, who allege that they were paid at set salaries of $2,500.00 per week, $1,800.00 and $2,500.00 per week, and $1,500.00 per week, respectively, the "regular

---

[8] The FLSA and the VOWA calculate overtime premiums for unpaid overtime wages the same way.

hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113.  Damages under the VWPA are not based on an employee's "regular rate."  Rather, under the VWPA, "any employer who fails to make payment of *wages*," i.e., "all wages or salaries due him for work performed" prior to termination, "shall be liable for the payment of all wages due ...."  Va. Code §§ 40.1-29(A), (G).

The undersigned recommends that Plaintiffs be awarded damages for unpaid overtime under the FLSA and unpaid straight time under the VWPA, as summarized below. *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual."); *Hudson*, 2024 WL 2870845, at *12 (E.D. Va. Mar. 15, 2024) ("Plaintiffs cannot recover from the same defendant for—for example— damages under both the FLSA for non-overtime wages at the minimum wage and the VWPA for non-overtime wages at the parties' agreed-upon-hourly rate.").

a)   <b>Juan Hernandez</b>

Plaintiff Hernandez is an hourly employee with a regular rate of $28.00 per hour.  (Dkt. No. 1 ¶ 66); 29 C.F.R. § 778.110.  Plaintiff Hernandez alleges he worked 10 hours of overtime per week for 37 weeks, for a total of 370 hours of overtime.  (Dkt. No. 1 ¶¶ 61, 63; Dkt. No. 12-5 at 4.)  Plaintiff was paid at his regular rate of $28.00 per hour with no overtime premium, leaving Plaintiff with an overtime premium deficiency of $5,180.00 (370 hours x ($28.00 x 0.5)).  (Dkt. No. 12-5 ¶¶ 16–20.)  Plaintiff further alleges that he received no payment for straight time or overtime for his last two weeks of work.  (*Id.*)  Plaintiff is thus owed an $2,240.00 for straight time

worked (80 hours x $28.00) during that period,[9] plus an additional $840.00 for overtime worked (20 hours x ($28.00 x 1.5)). (*Id.* ¶ 21.) The undersigned thus recommends that Plaintiff Hernandez be awarded unpaid wages in the amount of $8,260.00, as summarized below.

| Hours Worked Per Week | Straight Time Hours Per Week | Overtime Hours Per Week | Regular Rate | Overtime Premium | Overtime Rate | Weeks Owed Overtime Premium | Weeks Owed All Straight Time + Overtime | Total FLSA + VWPA Damages |
|---|---|---|---|---|---|---|---|---|
| 50 | 40 | 10 | $28.00 / hour | $14.00 / hour | $42.00 / hour | 37 | 2 | OT Premium: $5,180.00<br><br>Straight Time: $2,240.00<br><br>OT: $840.00<br><br>**Total: $8,260.00** |

b)     **Neptali Lopez Soriano**

Plaintiff Soriano was paid a rate of $300.00 per day. (Dkt. No. 1 ¶ 76.) Plaintiff's "regular rate is determined by totaling all the sums received at such day rates … in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112. Plaintiff was paid $1,500.00 per week and worked, on average, 62.5 compensable hours per week. (Dkt. No. 12-6 ¶ 17.) Accordingly, Plaintiff's regular rate is $24.00 per hour. Plaintiff worked 22.5 hours of overtime per week for 50 weeks, for a total of 1,125 hours of overtime. (*Id.* at 4.) Plaintiff was paid at his regular rate of $24.00 per hour with no overtime premium, leaving Plaintiff with an overtime premium deficiency of $13,500.00   (1,125 hours x ($24.00 x 0.5)). (*Id.* ¶¶ 16–20.) Plaintiff

---

[9] As an hourly employee, Plaintiff Hernandez's regular rate is the same as his hourly wage (i.e., $28.00 per hour). Plaintiff is owed wages for 40 hours of straight time work (i.e., $2,240.00).

Soriano further alleges that that he received no payment for straight time or overtime for his last two weeks of work. (*Id.* ¶ 21.) Plaintiff is thus owed $3,000.00 for straight time worked during that period (10 days x $300.00),[10] plus an additional $1,620.00 for overtime worked (45 hours x ($24.00 x 1.5)). The undersigned thus recommends that Plaintiff Soriano be awarded unpaid wages in the amount of $18,120.00, as summarized below.

| Hours Worked Per Week | Straight Time Hours Per Week | Overtime Hours Per Week | Regular Rate | Overtime Premium | Overtime Rate | Weeks Owed Overtime Premium | Weeks Owed All Straight Time + Overtime | Total FLSA + VWPA Damages |
|---|---|---|---|---|---|---|---|---|
| 62.5 | 40 | 22.5 | $24.00 / hour | $12.00 / hour | $36.00 / hour | 50 | 2 | OT Premium: $13,500.00<br><br>Straight Time: $3,000.00<br><br>OT: $1,620.00<br><br>**Total: $18,120.00** |

c)    **Eduardo Barerra**

Plaintiff Eduardo Barerra was paid a set salary of $2,500.00 per week. (Dkt. No. 1 ¶ 30.) Plaintiff worked, on average, 65 compensable hours per week. (Dkt. No. 12-2 ¶ 17.) Accordingly, Plaintiff's regular rate is $38.46 per hour.[11] (*Id.* at 4); *see also* 29 C.F.R. § 778.113 ("[T]he regular

---

[10] Plaintiff Soriano's regular rate differs from his wage, which is $300.00 per day. Plaintiff "typically and customarily worked five (5) days per week …." (Dkt. No. 12-6 ¶ 17.) Plaintiff is owed wages for two weeks or ten days of straight time work (i.e., $3,000.00).

[11] The undersigned adopts the regular hourly rates set forth in the declarations of Plaintiffs Eduardo Barerra, Juvencio Barerra, and Menjivar. (Dkt. Nos. 12-2, 12-3, and 12-4 at 4.) Presumably, Plaintiffs' salaries were "intended to compensate" Plaintiffs for working more than 40 hours per week. 29 C.F.R. § 778.113.

hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."). Plaintiff worked 25 hours of overtime per week for 71 weeks, for a total of 1,775 hours of overtime. (*Id.* at 4.) Plaintiff was paid at his regular rate of $38.46 per hour with no overtime premium, leaving Plaintiff with an overtime premium deficiency of $34,133.25 (1,775 hours x ($38.46 x 0.5)). (*Id.* ¶¶ 17–20.) Plaintiff further alleges that he received no payment for straight time or overtime for his last two weeks of work. (*Id.*) Plaintiff is thus owed $5,000.00 for straight time worked during that period (2 weeks x $2,500.00),[12] plus an additional $2,884.50 for overtime worked (50 hours x ($38.46 x 1.5)). The undersigned thus recommends that Plaintiff Eduardo Barerra be awarded unpaid wages in the amount of $42,017.75, as summarized below.

| Hours Worked Per Week | Straight Time Hours Per Week | Overtime Hours Per Week | Regular Rate | Overtime Premium | Overtime Rate | Weeks Owed Overtime Premium | Weeks Owed All Straight Time + Overtime | Total FLSA + VWPA Damages |
|---|---|---|---|---|---|---|---|---|
| 65 | 40 | 25 | $38.46 / hour | $19.23 / hour | $57.69 / hour | 71 | 2 | OT Premium: $34,133.25<br><br>Straight Time: $5,000.00<br><br>OT: $2,884.50<br><br>**Total: $42,017.75** |

---

[12] Plaintiff Eduardo Barerra's regular rate differs from his salary, which is $2,500.00 per week. Plaintiff is owed his salary for two weeks of straight time work (i.e., $5,000.00).

d)      **Juvencio Barerra**

In 2022, Plaintiff Juvencio Barerra was paid a set salary of $1,800.00 per week. (Dkt. No. 12-3 ¶ 19.) Plaintiff worked, on average, 60 compensable hours per week. (Dkt. No. 12-3 ¶ 17.) Accordingly, Plaintiff's regular rate is $30.00 per hour. Plaintiff worked 20 hours of overtime per week for 47 weeks, for a total of 940 hours of overtime. (*Id.* at 4.) Plaintiff was paid at his regular rate of $30.00 per hour with no overtime premium, leaving Plaintiff with an overtime premium deficiency of $14,100.00 (940 hours x ($30.00 x 0.5)). (*Id.* ¶¶ 17–20.) Plaintiff is thus owed $14,100.00 for overtime hours worked in 2022.

In 2023, Plaintiff was paid a set salary of $2,500.00 per week. (*Id.* ¶ 19.) Plaintiff continued to work, on average, 60 compensable hours per week. (*Id.* ¶ 17.) Plaintiff's regular rate was $41.67 per hour. Plaintiff worked 20 hours of overtime per week for 30 weeks, for a total of 600 hours of overtime. (*Id.* at 4.) Plaintiff was paid at his regular rate of $41.67 per hour with no overtime premium, leaving Plaintiff with an overtime premium deficiency of $12,501.00 (600 hours x ($41.67 x 0.5)). (*Id.* ¶¶ 17–20.) Plaintiff further alleges that he received no payment for straight time or overtime for his last two weeks of work. (*Id.* ¶ 21.) Plaintiff is thus owed $5,000.00 for straight time worked during that period,[13] plus an additional $2,500.00 (40 hours x ($41.67 x 1.5)), for a total of $20,001.00. The undersigned thus recommends that Plaintiff Juvencio Barerra be awarded unpaid wages in the amount of $34,101.00, as summarized below.

---

[13] Plaintiff Juvencio Barerra's regular rate differs from his 2023 salary, which is $2,500.00 per week. Plaintiff is owed his salary for two weeks of straight time work (i.e., $5,000.00).

| Hours Worked Per Week | Straight Time Hours Per Week | Overtime Hours Per Week | Regular Rate | Overtime Premium | Overtime Rate | Weeks Owed Overtime Premium | Weeks Owed All Straight Time + Overtime | Total FLSA + VWPA Damages |
|---|---|---|---|---|---|---|---|---|
| 60 | 40 | 20 | $30.00 / hour | $15.00 / hour | $45.00 / hour | 47 | 0 | OT Premium: $14,100.00<br><br>Straight Time: $0.00<br><br>OT: $0.00<br><br>**Total: $14,100.00** |
| 60 | 40 | 20 | $41.67 / hour | $20.83 / hour | $62.50 / hour | 30 | 2 | OT Premium: $12,501.00<br><br>Straight Time: $5,000.00<br><br>OT: $2,500.00<br><br>**Total: $20,001.00** |

e)    **Jose Menjivar**

Plaintiff Menjivar was paid a set salary of $1,500.00 per week for the duration of his employment. (Dkt. No. 12-4 ¶ 20.) From September 2022 through October 2022, Plaintiff worked an average of 45 hours per week, making his regular rate $33.33 per hour. (*Id.* ¶ 16.) During that period, Plaintiff worked five hours of overtime per week for nine weeks, for a total of 45 hours of overtime. (*Id.* at 4.) Plaintiff was paid at his regular rate with no overtime premium, leaving Plaintiff with an overtime premium deficiency of $750.15 (45 hours x ($33.33 x 0.5)). (*Id.* ¶ 21.) Plaintiff is thus owed $750.15 for September 2022 through October 2022.

From November 2022 through August 2023, Plaintiff worked an average of 60 hours per week, making his regular rate $25.00 per hour. (*Id.* ¶ 18.) During that period, Plaintiff worked 20 hours of overtime per week for 39 weeks, for a total of 780 hours of overtime. (*Id.*) Plaintiff was paid at his regular rate of $25.00 per hour with no overtime premium, leaving Plaintiff with an overtime premium deficiency of $9,750.00 (780 hours x ($25.00 x 0.5)). (*Id.* ¶ 21.) Plaintiff further alleges that he received no payment for straight time or overtime for his last two weeks of work. (*Id.*) Plaintiff is thus owed $3,000.00 for straight time worked during that period,[14] plus an additional $1,500.00 for overtime worked (40 hours x ($25.00 x 1.5)). Plaintiff is thus owed $14,250.00 for November 2022 through August 2023. The undersigned thus recommends Plaintiff Menjivar be awarded unpaid wages in the amount of $15,000.15, as summarized in the below chart.

| Hours Worked Per Week | Straight Time Hours Per Week | Overtime Hours Per Week | Regular Rate | Overtime Premium | Overtime Rate | Weeks Owed Overtime Premium | Weeks Owed All Straight Time + Overtime | Total FLSA + VWPA Damages |
|---|---|---|---|---|---|---|---|---|
| 45 | 40 | 5 | $33.33 / hour | $16.67 / hour | $50.00 / hour | 9 | 0 | OT Premium: $750.15<br><br>Straight Time: $0.00<br><br>OT: $0.00<br><br>**Total: $750.15** |

---

[14] Plaintiff Menjivar's regular rate differs from his salary for November 2022 through August 2023, which is $1,500.00 per week. Plaintiff is owed his salary for two weeks of straight time work (i.e., $3,000.00).

| Hours Worked Per Week | Straight Time Hours Per Week | Overtime Hours Per Week | Regular Rate | Overtime Premium | Overtime Rate | Weeks Owed Overtime Premium | Weeks Owed All Straight Time + Overtime | Total FLSA + VWPA Damages |
|---|---|---|---|---|---|---|---|---|
| 60 | 40 | 20 | $25.00 / hour | $12.50 / hour | $37.50 / hour | 39 | 2 | OT Premium: $9,750.00<br><br>Straight Time: $3,000.00<br><br>OT: $1,500.00<br><br>**Total: $14,250.00** |

2.    *Liquidated Damages*

In FLSA cases, employees are routinely awarded liquidated damages equal to the amount of unpaid overtime compensation. *See* 29 U.S.C. § 216(b); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985). An employer can avoid liquidated damages if he can show "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. Here, Defendants have not appeared or presented any defenses to Plaintiffs' FLSA claim, so an award of liquidated damages equal to the amount of unpaid overtime compensation is appropriate. *Aukhert v. Pritt Inv. Partners, LLC*, No. 1:22-CV-00655 (MSN/WBP), 2024 WL 5410979, at *12 (E.D. Va. Dec. 16, 2024), *report and recommendation adopted*, No. 1:22-CV-00655 (MSN/WBP), 2025 WL 817600 (E.D. Va. Mar. 14, 2025).

The VWPA provides for an award of "an additional equal payment of wages" as "liquidated damages." Va. Code § 40.1-29(G). "If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the

24

employee an amount equal to triple the amount of wages due and reasonable attorney's fees and costs." *Id.* § 40.1-29(J). The "knowingly" standard can be satisfied by providing evidence that the person "has knowledge of the information." *Id.* § 40.1-29(K). Here, Plaintiffs allege that they were not paid earned wages for their last two weeks of work. (Dkt. No. 1 ¶¶ 34, 46, 59, 69, 79.) Plaintiffs further allege that Defendants had actual knowledge that they had not been paid, and that their "failure to fully and timely pay Plaintiffs ... was knowing, intentional, malicious, and willful ...." (*Id.* ¶ 83.) Plaintiffs' conclusory allegations are unsupported by facts alleged elsewhere in the Complaint, and are thus distinguishable from those in other cases in which this Court has awarded treble damages for violations of the VWPA. *See, e.g., Aukhert v. Pritt Inv. Partners, LLC*, No. 1:22-CV-00655 (MSN/WBP), 2024 WL 5410979, at *8 (E.D. Va. Dec. 16, 2024), *report and recommendation adopted*, No. 1:22-CV-00655 (MSN/WBP), 2025 WL 817600 (E.D. Va. Mar. 14, 2025) (finding Defendants acted knowingly where it was "clear from letters and emails from [Defendant] that he was aware of his failure to pay Plaintiffs regularly and for the full amount owed to them"). Plaintiffs also fail to allege any facts in support of Defendants' mental states in the declarations in support of the Motion for Default Judgment. *See, e.g., Barbeau v. Siege Technologies, LLC*, No. 1:24-CV-682-CMH-WEF, 2025 WL 1905584, at *7 (E.D. Va. July 1, 2025) (finding "Defendant's knowing mental state established in light of Plaintiff's Declaration attached to his Motion for Default Judgment, which is appropriately considered on the current posture"). Accordingly, the undersigned declines to award Plaintiffs treble damages and instead recommends an award of liquidated damages equal to Plaintiffs' unpaid straight time wages.

The undersigned's recommendations for liquidated damages under the FLSA and the VWPA are summarized in the below chart.

| Plaintiff | Unpaid Overtime Compensation | Liquidated Damages (FLSA / VOWA) | Unpaid Straight Time Compensation | Liquidated Damages (VWPA) |
|---|---|---|---|---|
| Hernandez | $6,020.00 | $6,020.00 | $2,240.00 | $2,240.00 |
| Soriano | $15,120.00 | $15,120.00 | $3,000.00 | $3,000.00 |
| Eduardo Barerra | $37,017.75 | $37,017.75 | $5,000.00 | $5,000.00 |
| Juvencio Barerra | $29,101.00 | $29,101.00 | $5,000.00 | $5,000.00 |
| Menjivar | $12,000.15 | $12,000.15 | $3,000.00 | $3,000.00 |

3.    *Attorney's Fees and Costs*

Plaintiffs also seek reasonable attorney's fees and costs, which are recoverable under both the FLSA and the VWPA. (Dkt. No. 1 at 16, 19.) In their Memorandum in Support of Motion for Default Judgment, Plaintiffs request $11,385.00 in attorney's fees and $530.00 in costs. (Dkt. No. 12 at 17–18.) Plaintiffs attach to their memorandum the Declaration of Gregg C. Greenberg in Support of an Award of Attorney's Fees and Costs, which includes a breakdown of their attorney's time spent on this case. (Dkt. No. 12-7.)

Under the FLSA, the Court "shall, in addition to any judgment awarded to the … plaintiffs, allow a reasonable attorney's fee to be paid by the defendant[s], and costs of the action." 28 U.S.C. § 216(b). Similarly, under the VWPA, "if an employer fails to pay wages to an employee," the Court shall award reasonable attorney's fees and costs. Va. Code § 40.1-29(J). In calculating attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in

controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). The Federal Rules of Civil Procedure allow the prevailing party an award of costs incurred unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1).

Plaintiffs' counsel has provided billing records and a sworn declaration in support of the request for fees and costs. (Dkt. No. 12-7.) Applying a lodestar analysis, the undersigned finds that Plaintiffs' request is reasonable and should be granted. *See Airlines Reporting Corp. v. Cartagena Travel and Tours, Inc.*, 2012 WL 13019066, at *11 (E.D. Va. Aug. 3, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the … reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate … [w]hen the documentation of hours is inadequate, the district court may reduce the award accordingly.").

Plaintiffs' counsel performed a total of 25.30 hours of work at a rate of $450.00 per hour. In support of the reasonableness of his hourly rate, Plaintiffs' counsel, by his own declaration, offers his credentials, submits that his customary hourly rate is $450.00, and submits that based on his review of attorney's fees petitions before this Court, his hourly rate is reasonable and consistent with that of other plaintiff-side employment attorneys seeking attorney's fee awards in the Eastern District of Virginia. The undersigned finds Plaintiffs' counsel's $450.00 hourly rate to be reasonable when considering the totality of circumstances, including the nature of the case, counsel's experience, and rates established for similarly positioned counsel and matters in this district. The undersigned further finds that no adjustment to the hourly rate should be applied.

Accordingly, the undersigned finds that the lodestar fees amount of $11,385.00 (25.30 hours x $450.00) is reasonable, need not be further adjusted, and should be awarded to Plaintiffs.

As for costs, Plaintiffs seek recovery of $530.00 resulting from the filing of the Complaint ($405.00) and service of process ($125.00). (Dkt. No. 12-7 at 3.) The undersigned finds that these costs are reasonable and necessary to this action and should be awarded to Plaintiffs.

        4.    *Interest*

Plaintiffs did not request pre- or post-judgment interest in the Motion for Default Judgment and only vaguely requested "interest" in the Complaint. (*See, e.g.*, Dkt. No. 1 at 15, 19.) Given that Plaintiffs do not seek interest in the Motion, the undersigned recommends that interest (pre- or post-judgment) not be awarded.

## IV.   <u>Recommendations</u>

For the foregoing reasons, the undersigned recommends that Plaintiffs' Motion for Default Judgment (Dkt. No. 12) be **GRANTED**. Specifically, the undersigned recommends that the Court:

- Enter judgment in favor of Plaintiff Eduardo Garcilazo Barerra and against Defendants Nova Shotcrete and Concrete, Inc. and Crystal Blue Aquatics, LLC, jointly and severally, for actual damages in the amount of $84,035.50 ($5,000.00 in unpaid straight time compensation + $37,017.75 in unpaid overtime compensation + $42,017.75 in liquidated damages under the FLSA and VWPA);

- Enter judgment in favor of Plaintiff Juvencio Garcilazo Barerra and against Defendants Nova Shotcrete and Concrete, Inc. and Crystal Blue Aquatics, LLC, jointly and severally, in the amount of $68,202.00 ($5,000.00 in unpaid straight time compensation + $29,101.00 + $34,101.00 in liquidated damages under the FLSA and VWPA);

- Enter judgment in favor of Plaintiff Jose Marlon Garcia Menjivar and against Defendants Nova Shotcrete and Concrete, Inc. and Crystal Blue Aquatics, LLC, jointly and severally, in the amount of $30,000.30 ($3,000.00 in unpaid straight time compensation + $12,000.15 in unpaid overtime compensation + $15,000.15 in liquidated damages under the FLSA and VWPA);

- Enter judgment in favor of Plaintiff Juan Hernandez and against Defendants Nova Shotcrete and Concrete, Inc. and Crystal Blue Aquatics, LLC, jointly and severally, in the amount of $16,520.00 ($2,240.00 in unpaid straight time compensation + $6,020.00 in unpaid overtime compensation + $8,260.00 in liquidated damages under the FLSA and VWPA);

- Enter judgment in favor of Plaintiff Neptali Lopez Soriano and against Defendants Nova Shotcrete and Concrete, Inc. and Crystal Blue Aquatics, LLC, jointly and severally, in the amount of $36,240.00 ($3,000.00 in unpaid straight time compensation + $15,120.00 in unpaid overtime compensation + $18,120.00 in liquidated damages under the FLSA and VWPA);

- Award Plaintiffs attorney's fees in the amount of $11,385.00 and litigation costs in the amount of $530.00, to be paid to Plaintiffs' counsel Zipin, Amster & Greenberg, LLC; and

- Dismiss with prejudice Counts III and V.

## V.    **Notice**

Plaintiffs are directed to serve by registered mail a copy of this Report and Recommendation on Defendants within seven (7) days of entry of this Report and Recommendation.  Plaintiffs are further directed to file a declaration certifying service of this Report and Recommendation on Defendants via the Court's electronic filing system within ten

(10) days of entry of this Report and Recommendation. The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

       **ENTERED** this 12th day of August, 2025.

Alexandria, Virginia

                           /s/
                           Lindsey Robinson Vaala
                           United States Magistrate Judge